UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN E. KENNEY, JR. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of )<br>Social Security Administration )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO.<br>09-40153 - TSH |

**MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S CROSS-MOTION
FOR AN ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**
September 30, 2011

**HILLMAN, M. J.**

**Nature of the Proceeding**

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Income ("SSI"). The Plaintiff moves this Court to remand to the agency the final decision denying him social security disability benefits. (Docket No. 14). The Commissioner filed a cross-motion for this Court to enter an order affirming the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Docket Nos. 17).

The parties have consented to this court's jurisdiction (Docket No. 19). See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the Commissioner's motion is affirmed, consistent with the terms set forth in this Memorandum.

**Nature of the Case**

This is an appeal of a final decision of the Commissioner of the Social Security Administration ("SSA") denying the application of Plaintiff Steven Kenney ("Mr. Kenney" or "Plaintiff") for Disability Insurance Benefits and Supplemental Security Income. Mr. Delgado appeals the Commissioner's denial of his claim on the grounds that the decision is not supported by substantial evidence under U.S.C. §§ 405(g) and 1383(c)(3). Specifically, Plaintiff disputes the Commissioner's decision that he is not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 423(c), (d). Plaintiff alleges that he is unable to work due to depression, diabetes, and flat feet.

## Procedural History

On September 3, 2009, Plaintiff Steven Kenney Jr. ("Plaintiff") filed a complaint seeking to either find Plaintiff eligible for Social Security benefits and reverse a finding to the contrary by Commissioner Michael Astrue ("Defendant"), or in the alternative to reverse and remand for a new hearing by a different Administrative Law Judge ("ALJ"). Now before the Court is Plaintiff's Motion to Remand to the Agency a Final Decision Denying Him Social Security Benefits (Docket No. 14), and Defendant's Motion for an Order Affirming the Decision of the Commissioner (Docket No. 17).

## Statement of Facts

**1.** **Educational, Occupational History and Daily Activities**

Plaintiff lives in Leominster, Massachusetts and was 49 years old at the time of the hearing. Tr. 106. He formerly worked repairing computers, and obtained jobs through a temporary employment agency. Tr. 25. Plaintiff later serviced networked computers, which would require him to travel to the site of each computer. Tr. 28. Initially, the work involved

lifting between 20 and 50 pounds, but computers and their component have become smaller over the years. Tr. 29. Plaintiff's most recent employment position ended in September 2004. Tr. 245. Plaintiff was incarcerated from September 2004 to November 2005. Tr. 218.

Plaintiff lives at home with his parents, who cook for him, although Plaintiff testified that he spends most of his time taking care of them. Tr. 37-38. He rarely spends time with friends, but enjoys leaving the house and driving a car. Tr. 39. Sleeping is a problem for Plaintiff and he naps in the middle of the day. Tr. 38. He no longer lifts heavy things because of his flat feet and back problems. Tr. 49. Plaintiff takes psychiatric medications and received psychotherapy treatment twice a week at the Lipton Mental Health Center in Leominster.[1]

2. **Medical Evidence**

In April 2006, Plaintiff was seen by a psychiatrist named Dr. Michael Braverman. Tr. 219. Dr. Braverman found signs of anxiety, depression, and possible personality disorder issues, and rated Plaintiff at 52 on the GAF scale.[2] Tr. 219. Dr. Braverman concluded that Plaintiff's issues would resolve themselves "over the next few months with treatment." *Id.* Another psychiatrist, Dr. E. Arthur Garvin of Disability Determination Services, rated Plaintiff's GAF score as 65.

At the time of the hearing before the ALJ, Plaintiff had been receiving regular treatment for depression, including psychiatric medications and psychotherapy sessions twice a week.

---

[1] Plaintiff received state disability benefits under the Emergency Assistance to the Elderly, Disabled and Children (EAEDC) program. Tr. 45.

[2] GAF (Global Assessment of Functioning) scores may be helpful for "evaluating the extent of one's mental impairments," but can only "offer a snapshot of one's state of mind at the time of the evaluation" and says nothing about the durational requirement. *Eaton v. Astrue*, 2009 WL 2015903, at *7 (D. N.H. July 7, 2009). GAF ratings have no "direct correlation to the severity requirements in [the] mental disorders listings." Comments to Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-50747.

In March 2006 a physical evaluation on behalf of the state disability evaluations services revealed that Plaintiff's diabetes was "well controlled," that because of his orthotics, Plaintiff's flat feet only prevented him from standing or walking "for a long period of time," and that Plaintiff "just has to be careful with lifting or...bending." Tr. 221. Plaintiff's back pain can be aggravated when his foot orthotics wear out. Tr. 202. But when Plaintiff underwent an unrelated medical procedure in June 2006, he indicated he had no mobility limitations. Tr. 226.

In July 2006, Plaintiff was treated by Dr. Donald Levine for follow-up on his diabetes treatment. Tr. 237. Dr. Levine lowered Plaintiff's medication dosage and encouraged Plaintiff to monitor his blood sugar daily. *Id*. In October, Plaintiff again saw Dr. Levine, who prescribed Lisinopril to treat Plaintiff's mild diabetic nephropathy. Tr. 236.

Dr. Wayne Marchand, Plaintiff's podiatrist, reported in January 2007 that based on his experience treating Plaintiff since 1993 and as recently as November 2006, Plaintiff's obesity, diabetes, and flat feet contributed to a "problem with ambulation." Tr. 241. Dr. Marchand concluded that Plaintiff "does appear to fit into a disability category." (emphasis in original). *Id*.

In June 2007, Plaintiff complained to Dr. Marchand of a throbbing, aching and dull sensation in his left foot that has been present for three months and worsens with weight bearing, standing and walking. Tr. 262. Plaintiff refused a cortisone shot. Tr. 261. In July 2006, Plaintiff visited Dr. Marchand again complaining of foot pain. Tr. 263. Dr. Marchand recommended orthoses, as well as a pair of new walking shoes. *Id*.

Plaintiff returned to Dr. Marchand in November 2007, for treatment of foot pain that, according to Plaintiff, limited his ability to walk or stand. Tr. 265. Examination revealed pain in the posterior tibial tendon of the left foot. *Id*. Dr. Marchand instructed Plaintiff on a treatment

plan consisting of methods of non-surgical treatment such as physical therapy, injections, and orthotics. Tr. 264. Dr. Marchand's short term goals were to decrease pain and inflammation, improve ambulation, allow the patient to return to normal activities and work, and prevent further disability. *Id*.

In October of 2008, a regular check-up by Dr. Levine revealed no need to change the treatment regimen. Tr. 276. Dr. Levine's only recommendation was for Plaintiff to lose some weight. *Id*. Plaintiff had no major complaints other than a social concern regarding his wife moving away. *Id*.

Plaintiff's hearing was set for September 18, 2008, but was rescheduled when Plaintiff requested more time to find counsel. Tr. 57. At that time, the ALJ informed the Plaintiff that a hearing will only be rescheduled once to allow Plaintiff to obtain counsel, and Plaintiff agreed. Tr. 56. At the second hearing, held on January 15, 2009, Plaintiff again appeared without counsel and requested a second postponement to afford more time to find counsel. Tr. 19. The ALJ denied Plaintiff's request but assured the Plaintiff he would "ask...questions that I think would be asked of you if you had an attorney...." Tr. 22. At that time, Plaintiff asked about the consequences of withdrawing his claim. The ALJ asked the Plaintiff not to withdraw merely because he was without representation, (Tr. 23), and assured Plaintiff he would revisit the issue of withdrawal at the end of the hearing. Tr. 24.

**Plaintiff's Testimony**

Plaintiff reported in January 2007 that his typical routine involves walking, driving, socializing, and doing household chores. Tr. 159. Plaintiff often runs errands for his parents, does laundry, and performs household repairs at home and at the local senior center. Tr. 152.

At the hearing, the ALJ questioned Plaintiff about his impairments. At one point early in the hearing, the ALJ stated "I think you're going to say depression is your most serious problem, but let's talk about the diabetes." Tr. 32. The ALJ then inquired briefly about Plaintiff's "weight issues," taking note of Plaintiff's weight gain from 218 to 240 pounds, and commenting that "you don't look like someone I would call, quote, obese, unquote...." *Id*. Later, the ALJ returned to the issue of depression by inquiring about where treatment occurred, how often, and what medication Plaintiff used. Tr. 34-36.

The ALJ also questioned Plaintiff about the pain in his left foot. Tr. 32-34. Plaintiff described wearing orthotics, and said the pain prevents him from standing for longer than twenty or thirty minutes. *Id*. Plaintiff stated his previous jobs required him to move around often.

Plaintiff raised several other issues at the hearing: dizziness, foot pain (Tr. 32), inability to stand for long periods of time, trouble sleeping (Tr. 34), an inability to lift heavy objects (Tr. 49), and fatigue. Tr. 36. Regarding his fatigue, the Plaintiff noted that he sometimes has trouble sleeping, other times he oversleeps, and often he feels tired and naps during the middle of the day. Tr. 38.

**I.   Standard of Review**

Under § 205(g) of the Social Security Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for rehearing. 42 U.S.C. § 405(g). The Administrative Law Judge's finding on any fact shall be conclusive if it is supported by substantial evidence, and must be upheld "if a reasonable mind, reviewing the evidence as a whole in the record, could accept it as adequate to support his conclusion," even if the record could justify a different conclusion. *Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d

218, 222 (1st Cir. 1981); see also *Evangelista v. Sec'y Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the court, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *Irlanda Ortiz v. Sec'y of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Reversal is warranted only if the ALJ committed a legal or factual error in evaluating Mr. Fiske's claim, or if the record contains no "evidence rationally adequate...to justify the conclusions" of the ALJ. *Roman-Roman v. Commissioner of Social Security*, 114 Fed. App'x. 410, 411 (1st Cir. 2004); see also *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

## II. Standard for Entitlement to SSDI and SSI Benefits

In order to qualify Social Security disability insurance benefits, a claimant must demonstrate that he is disabled within the meaning of the Social Security Act. The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted, or can expect to last, for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A). The impairment(s) must be severe enough to prevent the claimant from performing not only his past work, but also any substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(1).

An applicant's impairment is evaluated under a five-step analysis set forth in the regulations promulgated under the statute. 20 C.F.R. § 404.1520. The First Circuit has described the analytical sequence as follows:

1. Is the claimant currently employed? If so, the claimant is automatically not considered disabled.

2. Does the claimant have a 'severe impairment'...an impairment 'which significantly limits his or her physical or mental capacity to perform basic work related functions[?]' If the claimant does not have an impairment of at least this degree of severity, he is automatically considered no disabled.

3. Does the claimant have an impairment equivalent to a specific list of impairments contained in Appendix 1 (of the Social Security regulations)? If the claimant has an impairment of such severe degree as listed, the claimant is automatically found disabled...If, however, his ability to perform basic work-related functions is impaired significantly (Test 2), but there is no 'Appendix 1' impairment (Test 3) the ALJ will continue on to the fourth question.

4. Does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency continues onto the fifth question.

5. Does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled, if not, he is not disabled.

*Goodermote v. Sec'y of Health and Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

The burden of proof is on the claimant as to the first four steps of the analysis. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under disability unless he furnishes such medical and other evidence of the existence thereof as the [ALJ] may require.") At the fifth step of the analysis, the burden shifts to the Commissioner to show that the claimant is capable of performing jobs available in the national economy. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001). In making that determination, the ALJ must assess the claimant's residual functional capacity (RFC) in combination with the vocational, including the claimant's age, education, and work experience. 20 C.F.R. § 404.1560(c).

D. *Administrative Law Judge's Findings*

At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since, September 28, 2004, the date of his alleged onset of disability.

(Tr. 12). At step two, the ALJ determined that Plaintiff had the following medically determinable impairments: congenital flat feet treated with orthotics; diabetes mellitus; history of lithotripsy twice; history of a torn mensicus in his right knee; history of right clavicle fracture; occasional back pain; obesity; and depression. (Tr. 12). The ALJ did not find these impairments were severe. (Tr. 13-15). In making this assessment, the ALJ highlighted normal mental status examinations and the alleviation of symptoms from his orthotics. (Tr. 14). Because Plaintiff possessed no severe impairments, the ALJ concluded that Plaintiff was not disabled. (Tr. 15)

Regarding Plaintiff's physical impairments, the ALJ found that orthotics "alleviated the discomfort caused by [Plaintiff's] flat feet," that Plaintiff's diabetes is adequately controlled, and that Plaintiff only shows signs of mild diabetic nephropathy. Tr. 14. Regarding Plaintiff's alleged mental impairment, the ALJ found that Plaintiff's therapist "offers a diagnosis only of mood disorder NOS," is able to perform daily activities independently, does not hallucinate or have delusions, and has a GAF score of 65. *Id*. The ALJ found Plaintiff's alleged physical symptoms credible, but that Plaintiff's testimony regarding the "intensity, persistence and limiting effects" is not credible as far as it suggests a severe impairment.

Considering the four functional areas used to evaluate mental disorders, the ALJ found that Plaintiff had no limitations in his daily activities, mild limitations in his social functioning and in his concentration, and no episodes of decompensation of an extended duration. The ALJ also found that Plaintiff's physical and mental impairments, considered singly or in combination, did not "significantly limit the claimant's ability to perform basic work activities." Tr. 15.

The ALJ gives controlling weight to medical opinions that are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent

with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d). When a medical opinion is not given controlling weight, the weight given is determined by a number of factors including supportability and consistency. 20 C.F.R. § 404.1527(d)(3-4). The ALJ will "...always give good reasons...for the weight" assigned to a medical opinion. 20 C.F.R. § 404.1527(d).

## DISCUSSION

*Plaintiff's Challenge to the ALJ Decision*

Plaintiff makes three arguments for remand: (1) the lack of counsel prejudiced Plaintiff; (2) the ALJ's application of step two of the impairment analysis misapplied the "slight abnormality" test; and (3) the ALJ erroneously ignored medical opinions and failed to explain the unfavorable credibility determination of Plaintiff's testimony.

*1.     Waiver of Counsel*

"A claimant has a statutory right to counsel at disability hearings." *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). However, the absence of counsel, without more, creates no basis for remand." *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 142 (1st Cir. 1987).

> Claimants for Social Security disability benefits have a statutory right to counsel at hearings. However, the right to counsel "falls well below the Sixth Amendment threshhold" applicable in criminal cases. As part of the right to counsel, claimants should be appropriately notified of that right. Claimants may, following sufficient notification of the right to counsel, waive the right by intelligently deciding to proceed pro se.

*Mandiej v. Chater*, 944 F.Supp. 121, 130 (D.N.H.1996) (quoting, inter alia, *Evangelista v. Sec'y of Health & Human Servs.*, 826 F .2d 136, 142 (1st Cir. 1987)) (internal citations omitted).

Significantly, the Court of Appeals for the First Circuit has held that "it is clear that the absence of counsel, without more, creates no basis for remand. There must be something extra. Thus,

-10-

remand for want of representation is necessitated only where there is a showing of unfairness, prejudice or procedural hurdles insurmountable by laymen." *Evangelista*, 826 F.2d at 142 (internal quotation marks and citations omitted). If a claimant waives the right to counsel, the ALJ has a greater duty to develop a full record. *Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991).

The ALJ is further required to fill gaps in the record and to assure that an unrepresented claimant is provided a full and fair hearing. *Currier v. Secy. of the Dep't of Health & Welfare*, 612 F.2d, 594, 598 (1st Cir. 1980); *DeBlois v. Sec 'y of Health & Human Servs.*, 686 F.2d 76, 78-81 (1st Cir. 1982); *Heggarty v. Sullivan*, 947 F.2d 997, 997-98 (1st Cir. 1991). In doing so, the ALJ must make a "searching investigation of the record" for evidentiary gaps. *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir.1972) (internal quotation marks and citations omitted); *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir.1987); *DeLorme v. Sullivan*, 924 F.2d 841 (9th Cir.1991).

To meet this burden of proving prejudice, Plaintiff now claims that the ALJ did not follow up on questions of his depression, barely followed up on his obesity, and did not follow up on his alleged dizziness or chronic pain, nephropathy, fatigue, napping, or bending or lifting limitations. See *Plaintiff's Brief*, at 6-9. With respect to all of these allegations, however, no follow up was warranted where Plaintiff's answers to the questions revealed his lack of disability. Most notably, when queried about his disability, Plaintiff admitted that he spent most of his time taking care of his parents, and that his inability to find a job was largely because he had a criminal record. (Tr. 37). He also admitted that he was able to perform work with his flat

foot condition. (Tr. 33-34). Also, in treatment notes subsequent to his hearing, Plaintiff admitted to his counselor that he believed he had received a fair hearing. (Tr. 285).

At his first hearing, in July 2008, Plaintiff reported to the ALJ that he was unable to find an attorney, and would like to continue looking for one. (Tr. 55). The ALJ informed him that he would postpone the hearing once in order to give Plaintiff an opportunity to pursue legal representation, but that he would only postpone it once. (Tr. 56-57). Plaintiff agreed to this. (Tr. 57). Six months later, Plaintiff appeared for his hearing without a representative, although still asserting that he would like to have one, but the ALJ conducted the hearing anyway. (Tr. 18-19). Plaintiff now contends that this pursuit of a hearing was prejudicial. (Pl.'s Br. at 4). This Court believes that the Plaintiff was sufficiently advised of the process, specifically at the outset of the hearing, and frequently throughout the procedure, as the ALJ informed the Plaintiff as to whether he had more information to offer or any questions.

As Plaintiff concedes, the absence of counsel alone creates no basis for remand; the Plaintiff must demonstrate unfairness, prejudice, or procedural hurdles. *See Evangelista*; (Pl.'s Br. at 6-7). To meet this burden, Plaintiff argues that the ALJ did not "follow up" on questions of his depression, barely followed up on his obesity, and did not follow up on his alleged dizziness or chronic pain, nephropathy, fatigue, napping, or bending or lifting limitations. (Pl.s' Br. at 6-9). With respect to all of these allegations, however, no "follow up" was warranted where Plaintiff's answers to the questions revealed his lack of disability. Most notably, when queried about his disability Plaintiff explicitly admitted that he spent most of his time taking care of his parents, and that his inability to find a job was because he had a criminal record, thereby taking his alleged disability off the table. (Tr. 37). He also admitted that he was able to perform

work with his flat foot condition. (Tr. 33-34). Also, in treatment notes subsequent to his hearing, Plaintiff admitted to his counselor that he believed he had received a fair hearing. (Tr. 285).

With respect to the specific allegations Plaintiff claims in his memorandum the ALJ should have pursued. The ALJ actually specifically asked questions about Plaintiff's treatment for his depression. (Tr. 34- 36). The ALJ clarify Plaintiff's height and weight with respect to his obesity. (Tr. 43-44). Plaintiff's dizziness was entirely unsupported by the record, and Plaintiff conceded that the only treatment for his foot was orthotics, which he received, and possibly a cortisone shot. (Tr. 32). As a result, his testimony reasonably did not lead the ALJ to continue asking questions about alleged dizziness. (Tr. 32). W ith respect to chronic pain, as noted, Plaintiff minimized his pain in relation to the role of his criminal history in his difficulty finding work. (Tr. 40). Plaintiff did not mention his nephropathy at his hearing. His alleged fatigue and napping, not present elsewhere on the record, was Plaintiff's report of sometimes oversleeping, and napping in the middle of the day, but he did not allege ongoing or out of the ordinary fatigue that prevented him from working. (Tr. 37-38). Finally, Plaintiff's alleged bending and lifting limitations are completely unsupported by the record, beyond one treatment note from March 2006 in which he alleged back pain, an ailment he failed to mention in treatment notes throughout the rest of the record, and were not mentioned at the hearing. (Tr. 220-221).

Plaintiff nonetheless pursues this argument in this brief by stating that prejudicial error was caused by the ALJ's failure to inform Plaintiff that he could ask the VE questions. (Pl.'s Br. at 9). However, the ALJ explained the nature of the VE in some detail to Plaintiff. (Tr. 20-22). He also, after questioning the VE, specifically asked Plaintiff if there were anything else he would like him to look at, to which Plaintiff responded that he had some eyesight issues,

demonstrating that he took the opportunity to augment the record. (Tr. 48, 52). The record otherwise reflects that Plaintiff had average intelligence, (Tr. 246 ), had previously been employed working with computers and electronics, and he presents no evidence that he did not understand the proceedings. After the ALJ conducted a fair hearing, facilitated Plaintiff's obtaining additional records to supplement the administrative record from at least two other sources and made a further offer of assistance at the close of the hearing:

| | |
|---|---|
| ALJ: | We'll send it there. All right. Before we close for today, anything else you think is important for me to look at? |
| CLMT | I'm not sure at this time. I, I don't have anything I can think of at ... |
| ALJ | All right, let me do what I said we should do. It'll take us a little while to get those records, and when we do, we'll read those, study those, make a decision, send it to your home. [...]. |

Tr. 52.

Accordingly, the Plaintiff has not proven prejudice nor unfairness as a result of Plaintiff's lack of counsel at the hearing.

2. *The Slight Abnormality Test*

A medically determinable impairment is one that results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic symptoms. 20 C.F.R. §§ 404.1508, 416.908. A severe impairment is a medically determinable impairment which significantly limits an individual's ability to do basic work activities, and lasts or is expected to last for 12 months or result in death. 20 C.F.R. §§ 404.1520(c), 416.920(c). Impairments having only a minimal effect on basic work activities are not severe. See SSR 85-28, Medical Impairments That Are Not Severe, available at 1985 WL

56856, at * 3 (1985); Munoz v. Sec'y of Health and Human Servs., 788 F.2d 822, 823 (1st Cir. 1986).

At Step Two, the ALJ must identify all non-severe impairments. The regulation reads as follows:

> If you do not have a severe medically determinable physical or mental impairment [or combination of impairments] that meets [or equals] the durational requirement ... we will find that you are not disabled.

20 CFR §§1520(a)(4)(ii), 1521(a). An impairment that is "not severe" must be a slight abnormality ... that has no more than a minimal effect on the ability to do basic work activities. *See* Social Security Ruling 96-6p.

It is the responsibility of the Secretary to determine issues of credibility and to draw inferences from the record evidence. *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). "The ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *DaRosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986). The credibility determination is entitled to deference. *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). Effectiveness of medication is one factor used to determine credibility of claimant's statements. 20 C.F.R. § 404.1529(c)(3-4). Gaps in medical treatment can be evidence that an impairment was not as severe as alleged. *Irlanda Ortiz v. Sec'y of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).

The ALJ properly found Plaintiff's testimony regarding his impairments not entirely credible. The record supported the conclusion that Plaintiff's orthotics effectively treated his flat feet, and that Plaintiff's treatment for diabetes prevented impairment. Depression was not

supported by the record because of conflicting GAF scores revealing significant improvement and because a GAF score is not directly relevant to an impairment determination.  Additionally, the record shows inconsistent testimony by Plaintiff; for example, in contrast to his claimed severe impairments -- Plaintiff admits he can and regularly does perform many physical functions required for basic work activities.  Tr. 38-41.

3      *Consideration of Medical Opinions and Credibility Determination of Plaintiff's Testimony*

The ALJ noted Dr. Marchand's orthotic treatment for Plaintiff's flat feet.  Dr. Marchand's medical opinion was properly afforded less weight because it was unsupported by, and inconsistent with substantial evidence on  the record.  Additionally, Dr. Marchand made clear within his opinion that he was unfamiliar with the standard for disability determination. The ALJ did make note of Dr. Kamen's opinion regarding symptoms arising from Plaintiff's diabetes (diabetic nephropathy), but the record did not present evidence of any severe impairments arising from that condition.  Indeed, the ALJ observed that there was no evidence his diabetes was anything but controlled while on medication.  (Tr. 14, 276).  Plaintiff has presented no evidence of limitations resulting from his diabetes and thus the ALJ properly determined it was not a severe impairment.  The ALJ did not need to include more of Dr. Levine's opinion in his findings because Dr. Levine only treated Plaintiff for diabetes, and the only symptoms arising from treatment could be relieved by medication.

While Plaintiff contends that the ALJ failed to assess the opinions provided by the doctors, the court believes otherwise.  The ALJ noted and observed the records of Dr. Marchand, Plaintiff's treating podiatrist who had prescribed othotics for Plaintiff; the ALJ noted that Drs. Levine and Kamens were treating sources who had diagnosed Plaintiff with diabetes but who

reported a mild neuropathy and improving glycemic control – records that did not establish that Plaintiff was unable to work.

As the parties are well aware, an administrative law judge is responsible for evaluating whether the medical opinion of a treating physician should be given controlling weight. *See* 20 C.F.R. § 416.927(d)(2). Generally, more weight is given to opinions from treating sources if their opinions are not inconsistent with other substantial evidence in the record. However, an ALJ "may choose not to give [the treating doctor's opinion] controlling weight if [the ALJ] finds that it is inconsistent with other substantial evidence in the record." *Green v.* Astrue, 588 F. Supp. 2d 147, 154 (D. Mass 2008). *See also Castro v. Barnhart*, 198 F. Supp. 2d 47, 54 (D. Mass. 2002). Still, an administrative law judge must consider a claimant's subjective allegations of pain and functional limitations, although he is not required to accept those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living. *See* 20 C.F.R. § 404.1529, 416.929; *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 194-95 (1st Cir. 1987); *Avery v. Sec'y of Health & Human Servs.*, 797 F.2d 19, 22-23 (1st Cir. 1986); *Winn v. Heckler*, 762 F.2d 180, 181 (1st Cir. 1985).

Here, the ALJ properly declined to afford controlling weight to Dr. Marchand's speculation that Plaintiff fit a disability category where, not only was it unsupported by his own treatment notes reflecting only minimal limitations, but reflected Dr. Marchand's admitted unfamiliarity with the Commissioner's disability standards in his underlining of the word "appear." (Tr. 241). Dr. Marchand's opinion was inconsistent with other evidence in the record and with some of Plaintiff's own testimony regarding his activities of daily living.

Because the ALJ's findings were supported by substantial evidence, the decision that Plaintiff is not disabled should be affirmed.

## **Conclusion**

For the foregoing reasons, Plaintiff's Motion to Remand to the Social Security Commission (Docket No. 14) is <u>denied</u> and Defendant's Cross-Motion for An Order Affirming the Decision of the Commissioner is <u>granted</u> (Docket No. 17)

<u>/s/Timothy S. Hillman</u>
TIMOTHY S. HILLMAN
U.S. MAGISTRATE JUDGE